## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JOHN NEWMAN** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | **Civil Action No.  1:20-cv-3761(TNM)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **FEDERAL BUREAU OF** | **:** | |
| **PRISONS and UNITED** | **:** | |
| **STATES PAROLE COMMISSION,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

## MEMORANDUM OF OPPOSING POINTS AND AUTHORITIES IN RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

**Dan L. Hardway #WV0001**
**1114 Erbacon Rd.**
**Cowen, WV 26206**
**Phone (304) 449-4722**
**dan@hardwaylaw.com**

**Counsel for Plaintiff**

1

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 3

BACKGROUND .......................................................................................................... 4

ARGUMENT ............................................................................................................... 9

   I. LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT, ADEQUACY OF
SEARCHES AND SUPPORTING DECLARATIONS. ........................................... 9

     A. FOIA Summary Judgment Standard. ................................................. 9

     B. Adequacy of Searches Standard ........................................................ 9

   II.    USPC HAS NOT SHOWN BEYOND MATERIAL DOUBT THAT IT CONDUCTED
AN ADEQUATE SEARCH OF LOCATIONS WHERE RECORDS RESPONSIVE TO
NEWMAN'S REQUEST ARE REASONABLY LIKELY TO BE LOCATED. ................... 11

   III.    THE USPC DECLARATION FILED IN THIS CASE FAILS TO MEET THE
STANDARDS NECESSARY TO SUPPORT A MOTION FOR SUMMARY
JUDGMENT. ........................................................................................................ 18

   IV.    THERE ARE GENUINE ISSUES OF FACT IN THIS CASE RAISED BY THE
RECORD HEREIN. ............................................................................................... 21

CONCLUSION ............................................................................................................ 25

TABLE OF AUTHORITIES

Cases

*Aguiar v. Drug Enforcement Administration*, 865 F.3d 730 (D.C. Cir. 2017) ............................... 9

*Dept. of Air Force* v. *Rose*, 425 U.S. 352 (1976) ........................................................................ 8

*DiBacco v. U.S. Army*, 795 F.3d 178 (D.C. Cir. 2015)................................................................ 8

*Founding Church of Scientology v. National Sec. Agency*, 610 F.2d 824 (D.C.Cir.1979)............ 9

*Hall* v. *C.I.A.*, 668 F.Supp.2d 172 (D.D.C. 2009) ................................................................ 8, 20

*King* v. *United States Department of Justice*, 830 F.2d 210 (D.C. Cir. 1987) .................. 9, 10, 20

*Milner* v. *Dept. of Navy*, 562 U.S. 562 (2011)........................................................................... 8

*Morley v. CIA,* 508 F. 3d 1108 (D.C. Cir. 2007) ........................................................................ 9

*Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) ....................................... 17

*Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) ................................................ 17

*Truitt* v. *Department of State*, 897 F.2d 540 (D.C. Cir. 1990)..................................................... 9

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999) .................................. 9, 20

*Vaughn* v. *Rosen*, 484 F.2d 820 (D.C. Cir. 1973)..................................................................... 10

*Weisberg v. DOJ*, 627 F.2d 365 (D.C. Cir. 1980)....................................................................... 9

Statutes

Freedom of Information Act, 5 U.S.C. § 552 ............................................................................... 4

## INTRODUCTION

Plaintiff, John Newman, by counsel, in support of his opposition to Defendants Bureau of Prisons ("BOP") and United States Parole Commission's ("USPC") Motion for Summary Judgment and in support of his Cross-Motion for Summary Judgment against the Defendants, offers the following memorandum of points and authorities.

## BACKGROUND

Plaintiff, Dr. John Newman ("Newman" or "Plaintiff"), is a retired Army officer presently employed as a political science professor at James Madison University ("JMU") in Harrisonburg, Virginia where he teaches classes and seminars on Cold War America and the presidency of John F. Kennedy. Dr. Newman has been engaged in scholarly academic research of Cold War America and the Kennedy presidency for the past thirty-three years. His work is designed to compile scholarly research on Cold War America and the presidency of John F. Kennedy for use in publications, the classes he teaches, and for other educational purposes and distributional fora. He also presents educational materials on the Cold War and the Kennedy presidency at various seminars and colloquia, and publishes the results of his research in the form of books and articles. As examples, in the past ten years he has taught classes on Counterterrorism, International Terrorism, and America in the 1960s at JMU. He has done presentations on subjects directly related to the Kennedy administration to the faculty and staff of JMU, and at major conferences in Dallas, Texas, and online presentations sponsored by Project JFK and JMU. Newman Decl. ¶ 2.

Dr. Newman holds a Ph.D. in Modern Far Eastern History from George Washington University. After having held military assignments to the National Security Agency ("NSA"), including as military representative to General William Odom, Director of the NSA, Newman

retired from the Army holding a rank of Major.  He has been employed as a college level professor for forty years at the University of Maryland Honors College and JMU.  He has published six books and numerous articles on historical subjects with a concentration on the history of the United States during the Cold War with a specialization in the Kennedy Administration.  *Id.* ¶ 3.  As a result of his recent research into the Kennedy administration, the case of a former Cuban exile, Manuel Antonio Carlos Veciana Blanche ("VECIANA"), has become of critical interest and importance to several questions that have arisen. *Id*. ¶ 4.

On 13 March 1974 Veciana was sentenced to two concurrent seven-year terms, with an additional Special Parole of three years. Veciana was incarcerated in the United States Penitentiary in Atlanta ("Atlanta Penitentiary") by the United States District Court for the Southern District of New York ("SDNYDC") after a conviction on drug charges.  *Id.* ¶ 5; Compl. Ex. 1, ECF No. 1-1 at p. 8.  Veciana was released on parole in mid-February 1976. Veciana, who died 18 June 2020, had stated under oath that he was on parole as he testified before the United States House of Representatives' Select Committee on Assassinations ("HSCA") in May of 1978. Newman Decl. ¶ 6; Compl. Ex. 10, ECF No. 1-1 at p. 72.

Newman sought records related to Veciana by filing requests under the Freedom of Information Act, 5 U.S.C. § 552, ("FOIA") directed to the BOP and the USPC as described in the Complaint filed herein.  *See* Compl. ¶¶ 8, 18 and Exs. 1, 7; ECF Nos. 1 at pp. 3, 5 and 1-1 at pp.1, 49.

At this point in the litigation, Newman is satisfied that the Defendant BOP has conducted an adequate search for the records he requested from them and has produced the records of the destruction of the documents sought.  He has consequently, by counsel, offered to file an agreed

stipulation of dismissal, subject to satisfactory negotiation of the terms of the stipulation, dismissing his claim against the BOP.

Newman's FOIA request to the USPC identified the subject of the request as "Manuel Antonio Carlos Veciana Blanche and advised that in 1974 he had been sentenced in the SDNYDC to seven years of incarceration with an additional three years of Special Parole. Compl. Ex. 7, ECF No. 1-1 at p. 49. The request informed the agency that Veciana was paroled in 1976. The request informed the agency of Veciana's death on 18 June 2020. *Id.* Newman also provided the USPC with copies of Veciana's indictment in Case No. 73 CR ***, the superseding indictment in Case No. 74 CR 7, the court's Judgment and Commitment order in Case No. 74 CR 7, and a copy of Veciana's online obituary. *Id.* at pp. 57, 60, 53 and 54.

On 23 July 2020 Newman requested that the USPC search for and provide:

"A.  Any and all records in your possession or control relating to or regarding Mr. Veciana's parole from prison.

B.  Any and all correspondence in your possession or control relating to or regarding Mr. Veciana, including but not limited to correspondence with any other branch or department of the United States government, or any state government or foreign government, regarding or related to Mr. Veciana.

C.  Any and all telephone call records in your possession or control relating to or regarding Mr. Veciana.

D.  Any and all recordings of any type of any interview, telephone call, hearings, or other event in your possession or control relating to or regarding Mr. Veciana.

E.  Any and all transcripts of any and all recordings of any type of any interview, telephone call, hearing, or other event in your possession or control relating to or regarding Mr. Veciana.

F.  Any and all photographs in your possession or control relating to or regarding Mr. Veciana.

G.  Any and all reports prepared pursuant to 18 U.S.C § 4208, in effect at the time of Mr. Veciana's incarceration and parole, in your possession or control relating to or regarding Mr. Veciana.

H.  Your full file on Mr. Veciana.

I.  Any other document you have in your possession and control relating to or regarding Mr. Veciana while he was in your custody or on parole.

J.  If you claim that a record responsive to requests A to I above has been destroyed in whole or in part, please provide any and all records of that destruction, including but not limited to records indicating the date of destruction, a

6

description of exactly what was destroyed, any cited authority for the destruction, and any identifying information regarding the person(s) who accomplished and recorded the destruction."

*Id.* at pp. 49-50.

The USPC responded by letter dated 3 August 2020 to Newman's FOIA request. Compl. Ex. 9, ECF No. 1-1 at p. 65. The USPC, assigning Tracking Number USPC-2020-000279 to Newman's request, reported that it did not have a file on Veciana and suggested three possible reasons for not having a file: 1) that Veciana had been or was serving a non-paroleable sentence; 2) that Veciana was serving a state sentence rather than a federal sentence; or 3) that Veciana had not served the minimum term necessary to be eligible for parole or had not yet applied for parole. *Id.*

All three reasons suggest by USPC for not having a file were inapplicable to Veciana as should have been known to the USPC from the information and documentation provided by Newman with his request. This was pointed out to USPC by a letter from Newman dated 15 August 2020. Compl. Ex. 10, ECF No. 1-1 at p. 66. As an additional indication that Veciana had been placed on parole, Newman provided the USPC a copy of an excerpt from Veciana's sworn testimony before the HSCA where he testified that he was on parole at the time of the hearing in April of 1978. *Id.* at p. 68. Newman suggested to the USPC that it may not have been searching all the reasonable name variations of Veciana's five names and asked again that a search be made using all reasonable variations of Veciana's five names and, specifically, that a search be made using "Antonio Veciana." *Id.* at p. 66. Newman again provided USPC with copies of the indictment and the superseding indictment both of which referred to Veciana as "Antonio Veciana." *Id.* at pp. 73, 78.

A USPC Government Information Specialist ("GIS") contacted Newman by electronic mail on 15 September 2020 asking for Veciana's date of birth, social security number or federal register number.  Compl. Ex. 11, ECF No. 1-1 at p. 84.  Newman provided Veciana's date of birth by return email the same day.  *Id.* at p. 85.  On 17 September 2020 USPC sent another copy of its form letter suggesting the same three reasons for it not having a file on Veciana as had been suggested in the letter of 3 August 2020.  Compl. Ex. 12, ECF No. 1-1 at p. 86.

A 27 October 2020 letter from Newman provided USPC information he had recently obtained from BOP that Veciana's federal register number was 80071-158. Compl. Ex. 13, ECF No. 1-1 at p. 87. USPC was also advised that BOP appeared to have maintained its file on Veciana under the name "Blanche Veciana, Manuel Antonio Carlos." *Id.* A request was made for USPC to use this new information to "renew and expand" its search.  *Id.* A copy of the BOP form containing the transmitted information was also provided.  *Id.*

On 5 November 2020 USPC responded by letter to Newman that it had "used all the information provided to research [Veciana] to no avail."  The letter went on to state that USPC had searched by the federal register number provided by BOP through Newman and by Veciana's date of birth.  Compl. Ex. 14, ECF No. 1-1 at p. 89.  The letter, however, also reported that USPC had only searched for four name variations: "Manuel Carlos, Manuel Antonio, Manuel Veciana and Manuel Blanche."  *Id.*

Newman responded by letter dated 12 November 2020 observing that the USPC letter of 5 November 2020 indicated that only four name variations had been used in the searches. Compl. Ex. 15, ECF. No. 1-1 at p. 90. Newman told USPC that the most common name for Veciana was "Antonio Veciana" and again asked it to search using "Antonio Veciana" and all reasonable variations of the five names.  *Id.*

USPC did not respond to the 12 November 2020 letter until after the complaint was filed in this case. On 5 January 2021 USPC wrote again reporting that a search had been conducted "for the following names in our records: Manuel Antonio, Manuel Carlos, Manuel Veciana and Manuel Blanche." The letter also attached a printout of the search conducted in "our search engine for both our current system and our Legacy system." The printout provided with the letter indicated that only the four name variations reported in the letter were searched by USPC, all beginning with the first name "Manuel". Hardway Decl. ¶ 17 & Ex. G.

## **ARGUMENT**

### I. LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT, ADEQUACY OF SEARCHES AND SUPPORTING DECLARATIONS.

#### A.    FOIA Summary Judgment Standard.

The FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for categories of material." *Milner* v. *Dept. of Navy*, 562 U.S. 562, 565 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the act." *Dept. of Air Force* v. *Rose*, 425 U.S. 352,361 (1976). Agency actions under the FOIA are subject to *de novo* review. 5 U.S.C. § 552(a)(4)(B); *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015). Summary judgment is only appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Hall* v. *C.I.A.*, 668 F.Supp.2d 172, 178 (D.D.C. 2009)("*Hall 1*").

#### B.    Adequacy of Searches Standard.

The agency has the burden of showing "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Department of the Army*, 920 F.2d 57, 68 (D.C. Cir.

1990).  The agency may satisfy that burden by submitting "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all records likely to contain responsive materials (if such records exist) were searched."  *Id.*  Such affidavits have to be reviewed in light of the whole record of the case and, if there is "substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials,' summary judgment is inappropriate."  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Founding Church of Scientology v. National Sec. Agency ("Founding Church")*, 610 F.2d 824, 837 (D.C.Cir.1979) .

To adequately describe a search so as to serve as a basis for summary judgement, the agency's declarations must, at a minimum, 1) describe the search terms and the types of searches performed, *Oglesby*, 920 F.2d at 68; 2) describe the search strategies of the components of the agency charged with conducting the search and a description of the results of the search, *Morley v. CIA,* 508 F. 3d 1108, 1122 (D.C. Cir. 2007); 3) provide an explanation of how the agency components conducted the search, *Aguiar v. Drug Enforcement Administration*, 865 F.3d 730, 738-39 (D.C. Cir. 2017); and 4) provide sufficient detail to allow the plaintiff to "challenge the procedures utilized," *Weisberg v. DOJ*, 627 F.2d 365, 371 (D.C. Cir. 1980).  A detailed declaration is necessary so as to afford the "FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby*, 920 F.2d at 68.  When the adequacy of an agency's search is in dispute, summary judgment for the agency is inappropriate to that issue.  *Founding Church*, 610 F.2d at 836-837; *Truitt* v. *Department of State*, 897 F.2d 540 (D.C. Cir. 1990).

The agency handling the FOIA request alone possesses knowledge of the precise content of its records systems and, consequently, "[t]he significance of agency affidavits in a FOIA case

cannot be underestimated." *King* v. *United States Department of Justice (King)*, 830 F.2d 210, 218 (D.C. Cir. 1987). Thus, the FOIA requester and the court both must rely upon the agency's representations in the declaration.  The agency's statements are critical because the resulting "'lack of knowledge by the party see[k]ing disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution,' with the result that 'the trial court, is completely without the controverting illumination that would ordinarily accompany'" a fully adversarial confrontation in a case with full discovery and fully informed parties on both sides of the case.  *Id*., quoting *Vaughn* v. *Rosen*, 484 F.2d 820, 824-825 (D.C. Cir. 1973). As *King* aptly stated: "Specificity is the defining requirement of the … affidavit; affidavits cannot support summary judgment if they are 'conclusory, merely reciting statutory standards or if they are too wide or too sweeping.'" *King,* 830 F.2d at 219 (citations omitted).

II.    USPC HAS NOT SHOWN BEYOND MATERIAL DOUBT THAT IT CONDUCTED AN ADEQUATE SEARCH OF LOCATIONS WHERE RECORDS RESPONSIVE TO NEWMAN'S REQUEST ARE REASONABLY LIKELY TO BE LOCATED.

USPC's declaration goes to great lengths describing searches in databases and records systems that may not be reasonably likely that responsive records may be found.  Much of the declaration describes searches of a database system that, apparently, contains only recent records. USPC's EntelliTrak system has records of files that had not been destroyed that were entered into the system on June 1, 2018, Thornton Decl. ¶ 13, ECF No. 17-4 at p. 3. Additional effort was spent on description of a search of "USPC's physical file library containing every hardcopy file *that is still active*." *Id.* at ¶ 16, p. 4 (emphasis added).  While USPC nowhere defines what it means by a file being "active," it also never explains why it would be reasonable to think that Veciana's file would still be active, or had been active as of June 1, 2018. A search of only active files is hard to classify as being reasonably calculated to find records in locations

where they were likely to exist if the files have been retired. The declaration's lack of specificity and obscure description make it very hard to determine if the database and file library were even relevant to a search for documents responsive to Newman's request.

After the filing of the Complaint in this case, USPC finally turned its attention to looking for responsive records in locations where they are likely to exist but did not avail themselves of searches reasonably designed to find responsive records in those locations. The first area searched that may have been reasonably likely was the USPC's archive transfer receipt and file distribution receipt hardcopy files assuming that such hardcopy files contained records from the period in which Veciana's file may have been transferred and/or destroyed. USPC's declaration does not provide any testimony in regard to the time extent of USPC's holdings in these two records systems or their manner of organization except to say that they are "kept in the same file cabinet." *Id.* at ¶ 31, 31, p. 7. Likewise, the USPC's Declarant does not indicate what search parameters were used in searching the hardcopy records in the "same file cabinet" other than to report that the searchers were looking for "receipts related to 'Manuel Antonio Carlos Veciana." *Id.*

After the Complaint in this case was filed, the USPC appears to have realized that records responsive to Newman's request were much more likely to be found at the Washington National Records Center ("WNRC"), a facility of the National Archives and Records Administration ("NARA") than at USPC's offices. *Id.* at ¶ 20, p. 5. This "receipt" would have been an SF-135. Pl. SUMF ¶ 4. This late realization by USPC about where responsive files might be located led the USPC to request the WNRC to search for records using Veciana's full name and register number. *Id.* at ¶ 28, p. 7. According to USPC, however, WNRC advised that it could not search its records by name or register number but, rather, needed the "transfer number" as provided on

Form SF-135. *Id*. at ¶ 29, p. 7. This led the USPC to finally search of its hardcopy SF-135's although we do not know if those internal records actually extend to the time relevant in this case. *Id.* at ¶ 30, p. 7. All USPC "active transfer receipts are kept in the same file cabinet in the USPC sole office." *Id*. We are not told the date range of the "active" receipts that are kept in that one file cabinet, but we know that the records manager was able to search them for receipts "related to" Veciana. *Id*. We are not told what search criteria was used to look for such related receipts. We are not told whether the receipts have attached box lists such as that in Def. Ex. D from the BOP. ECF 17-8 at p. 3. This search was designed, apparently, to try to locate a transfer number so that WNRC could then conduct a search of records transferred there by USPC.

USPC also now says that its record manager at that time also searched its internal archive disposition receipt file for receipts "related to Veciana." *Id.* at ¶ 31. Again, the documents in this "same file cabinet" yielded no results although we are again not provided any details about the time frame of the receipts held, the search parameters, or the nature of information available on the receipts searched. *Id.* For example, it appears that the only search parameter used was Veciana's full name. It does not appear that variations of those names, or the order in which they are used, was searched. Similarly, it does not appear that any search was made by register number or for receipts covering the period when Veciana's file would have been expected to become inactive. After searching these two file collections in its office, USPC gave up the search. USPC now offers speculation that "at some point in the USPC's history the USPC failed to maintain a file transfer receipt and file destruction receipt" for Veciana's file. *Id.* at ¶ 32, p. 8.

Forms SF-135 are not, themselves, records of the actual files transferred by a transferring agency unless they have an attachment listing the files actually transferred, a "box list." *See, e.g.,* Def. Ex. D, ECF 17-8 at pp. 2-3; Hardway Decl. Ex. A. In this case the USPC does not tell

us anything about the nature of the Forms SF-135 it maintains other than that they all fit in the same file cabinet.  We are not told whether the USPC regularly sends each file on a parolee separately to the WNRC when that file becomes inactive so that there would be a separate SF-135 for each parolee.  It may be forgivable speculation to wonder if that were the case whether all those SF-135s would fit in the "same file cabinet."  Alternatively, USPC does not tell us if it transfers parolee files to WNRC by batches on a periodic basis.  We are not told, but, if transfers are made on a periodic basis, it should not be hard to identify by date the transfers that may have included any file on Veciana based on the date that he ended his court-ordered supervision.  If the files are transferred periodically, we are not told whether the Forms SF-135 listed the actual files transferred. We know, for example, that the Atlanta Penitentiary closed and transferred files by year with a box list attached listing the names of the persons whose files were transferred. Govt. Ex. D, ECF 17-8 at pp. 2-3.  Even if the Forms SF-135 maintained by USPC do not have a box list attached, the transfer numbers from the Forms closest in time to the date when Veciana's file became inactive could have been provided to the WNRC to allow them to search their database for disposition records.

More importantly, USPC did not search, nor did it disclose, that duplicate copies of USPC's SF-135s are kept by the WNRC.  The WNRC is the first place to which retired agency records are transferred and most of the records held at the facility remain under the control of the transferring agency rather than NARA.  Hardway Decl. ¶ 15 & Ex. A. When a record is transferred by an agency to the WNRC, the transferring agency generates a Records Transmittal and Receipt, Standard Form 135 ("SF-135"), some of which have a box list attached.  *Id.;* Thornton Decl. ¶ 20, ECF No. 17-4 at p. 5; Def. Ex. D, ECF No. 17-8. Before records transferred to WNRC are destroyed, WNRC sends the transferring agency a Notice of Eligibility for

Disposal from NARA that notifies the transferring agency that the term of retention of the file is expiring under the relevant records disposition schedule. Def. Ex. B, ECF No. 17-6 at p. 5; Thornton Decl. ¶ 31, ECF No. 17-4 at p. 7. The decision to then destroy the file or retain it is made by the transferring agency.  *Id.*  WNRC maintains copies of the Forms SF-135 organized by Record Group and year.  Hardway Decl. ¶ 7 & Ex. B.  A Record Group comprises the records of a major government entity, usually a bureau or an independent agency. *Id.* at ¶¶ 7 & 8, Exs. B & C.  USPC has a separate unique Record Group number: RG 438. *Id.* Forms SF-135, with any attached box list, maintained by WNRC are available in hard copy files at the WNRC.  Hardway Decl. Ex. A.  Those files are open to the general public for research and review when the facility is not closed due to Covid as it now is.  *Id.*  Most records maintained at WNRC remain under the control of the transferring agency.  WNRC will not allow public access to most records without a written request and authorization from the transferring agency for such access.  *Id.* WNRC is currently closed to the public due to Covid restriction but remains open to government employees with business to conduct there.  *Id.*; Ex. B.

USPC could have easily searched WNRC's backup copy of USPC's Forms SF-135 but simply chose not to do so.  WNRC's copies could be easily searched because the Forms SF-135 held at the WNRC are segregated by agency and year.  Indeed, if the facility was not closed to the public Newman or his representatives could have searched these records to further show the inadequacy of the USPC's search for responsive records.

USPC's EntelliTrak electronic database is: 1) not the only electronic database available to USPC; and 2) not the electronic database most likely to contain information about Veciana. USPC's GIS, in the correspondence with Newman, mentions "Legacy systems" but the USPC declaration says nothing about any legacy system.  It is known, however, that USPC, prior to

1985, set up an electronic database known as the "Parole Decision History."  Pl. SUMF ¶ 14.
Under the relevant Records Disposition Authority ("RDA"), this system's master file is to be
maintained as a permanent record by USPC with copies sent to NARA every five years.
Hardway Decl. Exs. D & E.  This database contains records identified and searchable by a
parolee's federal register number. *Id.* Each parolee's entry in this system "contains
approximately forty items, including sentence parameters (e.g., sentence length and type, parole
decision parameters (e.g., offense severity and salient factor score) [sic], and the results of the
paroling consideration."  Hardway Decl. Ex. D. The name of the Parole Decision History
("PDH") was changed to the "Decision Reporting and Monitoring System" ("DRMS") in 2000.
The format of the growing database was also changed but the master file remained a permanent
record with copies sent to NARA every five years.  Pl. SUMF ¶¶ 14 & 15, Exs. D & E.   The
information in this database regarding Veciana would be responsive to Newman's request for
information related to Veciana's parole.  USPC has not provided any testimony that this database
has been searched.

The FOIA requires a responding agency to make "a good faith effort to conduct a search
for the requested records, using methods which can be reasonably expected to produce the
information requested." *Oglesby*, 920 F.2d 57, 68.  That includes searching for records in the
location where they may reasonably be expected to be found.  While at this point it is equally
speculative to say that USPC's file on Veciana does or does not exist, if it does exist it remains
under the control of the USPC and is likely to be located somewhere in the NARA system.
USPC has not searched that system because USPC claims to be unable to locate a "transfer
number" needed by the WNRC to conduct such a search.  While USPC claims to have performed
some type of search of their in-house hardcopy SF-135 file cabinet in carefully couched language

for "any receipts related to 'Manuel Antonio Carlos Veciana Blanche,'" they have not searched the WNRC Forms SF-135 which are more likely to contain the necessary information.

In regard to the in-house search USPC has done, we are not told whether such search included a search for receipts generated in 1984, 1985 or 1986.  We are not told, if there are such receipts, why they are not related to Veciana.   We are not told why USPC presumes they have failed to maintain a file receipt that would have covered the transfer of Veciana's parole file to the WNRC.  But the USPC has not searched the WNRC Forms SPF-135 to see if they can locate WNRC's Form SPF-135 related to the transfer of Veciana's file so as to obtain a transfer number that would allow WNRC to search its records on the disposition of those transferred files. It is surely not reasonable for USPC to not search this backup system so as to be able to search the place it speculates is the most likely place responsive records may be located: WNRC or another NARA facility.  If such a search is conducted and all that is found is a record of the transfer and destruction of Veciana's parole file, then that record is itself responsive to Newman's Request numbered "J."  It is also not unreasonable for the USPC to search its permanent DRMS database, or NARA's copy of that database, using Veciana's federal register number as the information in that system is likely to be responsive to Newman's request.   The USPC has searched an electronic database that has information about files that they had "records" of on 1 June 2018, but has not searched a database that has likely responsive records closer in time to when Veciana's parole file should have been active.

An agency "fulfills its obligations under FOIA if it can demonstrate beyond that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted).  In this case, USPC conducted fruitless searches of records systems not likely to

contain responsive records without searching an older electronic database and WNRC's records under USPC's control that would be much more likely to contain responsive records. Once USPC realized that WNRC was the more likely place to search for records, it made a brief, perfunctory, effort to search its records for the information WNRC needed to be able to conduct a search. Because this search of USPC's internal hardcopy records did not turn up anything specifically "related to 'Manuel Antonio Carlos Veciana Blanche,'" USPC speculates that it "failed to maintain a file transfer receipt" in its internal files but that "the [Veciana parole] file should have been destroyed." Thornton Decl. ¶ 32, ECF No. 17-4 at p. 8. USPC speculated instead of conducting a search of the backup copies of Forms SF-135 maintained by WNRC. USPC hopes that its speculation based on this incomplete search will be the end of the discussion. USPC has not demonstrated beyond material doubt that its search was reasonably calculated to uncover all relevant documents. A reasonable search, as shown by the record herein, would have included, at a minimum, a search of USPC's PDH and DRMS databases as well as WNRC's RG-438 Form SF-135.

III.   THE USPC DECLARATION FILED IN THIS CASE FAILS TO MEET THE STANDARDS NECESSARY TO SUPPORT A MOTION FOR SUMMARY JUDGMENT.

To meet its burden in this case "the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). There has to be enough proffered facts in an agency declaration supporting a motion for summary judgment from which the Court may determine whether the agency has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. "At a minimum, the agency must "specify 'what records were searched, by whom,

and through what process,'" *Rodriguez v. Dep't of Defense*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994)).

In this case, the USPC declaration filed in support of the agency's motion for summary judgment does not rise to the standard necessary to support the motion. The declaration recounts the searches conducted in a summary fashion without giving specific details as to parameters of the search. USPC's declaration makes much of reporting efforts to search records that would not be likely to contain responsive records such as the EntelliTrak database. But even the description of that database is ambiguous in that it is not at all clear from the declaration the time frame of records covered by, or recoverable from, that database. USPC avers that the EntelliTrak system contains "[a]ll USPC files that had not been destroyed in accordance with record keeping directives and policies were entered" as of June 1, 2018. Thornton Decl. ¶ 13, ECF No. 17-4 at p. 3. USPC, which insists that Veciana's files should have been destroyed in 1991, offers no explanation about why the EntelliTrak system was searched repeatedly while never mentioning the DRMS, a database much more likely to contain responsive records.

Only after the Complaint was filed in this case, did USPC realize that WNRC was a more likely repository for any documents responsive to Newman's request than were the records at USPC's offices. Thornton Decl. ¶ 28, ECF 17-4 at p. 7. Only then did USPC contact the WNRC to request that it search its records for responsive documents. *Id.* WNRC, however, advised that it needed the transfer number from the Form SF-135 covering Veciana's file transfer in order to search its records. *Id.* at ¶ 29, p. 7. The USPC declaration then describes the USPC's record manager's search of a "file cabinet" containing hardcopies of "archive transfer receipts," presumably Forms SF-135 although that detail is not provided, and a file containing "archive file disposition receipts." *Id.* at ¶¶ 30 & 31, p. 7. Absolutely no information is provided about the

nature of the holdings in "the same file cabinet" or the parameters of the search conducted. We are not told the coverage of the files in that file cabinet as to inclusive dates of records, nor are we told how the search was conducted. We are not told whether the records manager searched only for a document containing Veciana's full name, although that may be a reasonable inference from what we are told. We are not told whether the record manager searched the whole "sole file cabinet, or only drawers or files covering specific years or initials. We are not told the time frame covered by either the records searched or the search itself. We know that USPC miscalculated the date on which Veciana's file would have become inactive. *See Id.* at ¶ 11, p. 3; Pl. SUMF ¶¶ 1 & 2. It is possible that the records manager's search yielded no results because the files chosen for search were based on the miscalculated year in which USPC's Veciana's file would have become inactive. We do not know because the declaration does not give us enough information to be able to know. We are not told whether the Forms SF-135 from either the miscalculated or the actual year of the retirement of Veciana's file were actually available to search in USPC's "same file cabinet"?

One requirement for an adequate declaration is an avowal "that all records likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68. In this case it is known that WNRC maintains a backup copy of USPC's Forms SF-135, which are likely to contain responsive records but those records have not been searched. Likewise, there are electronic databases which are designated as permanent records under the relevant RDA that have not been searched: the PDH and DMRS databases. These databases are much more likely to contain responsive systems than is the electronic system actually searched. The declaration in this case does not mention these systems.

The declaration filed by USPC in this case lacks the specificity that is the defining requirement of agency declarations necessary to support summary. The USPC's declaration is conclusory, merely reciting statutory standards and generalities without providing the detail necessary to support the agency's claim that an adequate search was conducted. Repeatedly at critical points the USPC declaration lacks clarity, detail and specificity. USPC has failed to provide a declaration adequate to support its motion for summary judgment. "Specificity is the defining requirement of the … affidavit; affidavits cannot support summary judgment if they are 'conclusory, merely reciting statutory standards or if they are too wide or too sweeping.'" *King,* 830 F.2d at 219 (citations omitted).

## IV.    THERE ARE GENUINE ISSUES OF FACT IN THIS CASE RAISED BY THE RECORD HEREIN.

Summary judgment is not appropriate in an FOIA case if there are genuine issues of material fact pending in the case. Summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Hall* 1, 668 F.Supp.2d at 178. Summary judgment is also inappropriate when there are positive indications of overlooked materials in the record. *Valencia-Lucena*, 180 F.3d at 326.

At this point in the litigation, it is not possible to determine all the facts that may be in issue because the Defendants have yet to respond to Newman's statement of uncontested facts filed herewith, but it is possible to identify many currently existing issues of material fact. One critical fact about which there is conflict is Veciana's term of supervision. The calculation of the date of his release from supervision determines the date upon which his file would become inactive. That date then determines the time frame for a reasonable search for records responsive to Newman's request, including records of destruction of any file USPC may have had. USPC

calculates that date based on Veciana serving a seven-year sentence after conviction in Case No

73 CR 793.  Thornton Decl. ¶ 8, ECF No. 17-4 at p. 2.

Plaintiff, on the other hand, has offered evidence directly contradicting the assertion by

USPC and showing that Veciana was convicted in Case No. 74 CR 7 and was sentenced to a ten-

year period of supervision consisting of seven years of incarceration and three years of Special

Parole.  Compl. Ex. 5, ECF No. 1-1 at p. 41.  The Defendant BOP's records submitted as

exhibits by the government in this case support Newman's calculation of the period of

supervision, showing that Veciana's BOP file became inactive at the end of 1984 and was

transferred to NARA in 1985.  See Gov't Ex. B, ECF No. 17-6 at pp. 5 & 7; Gov't Ex. D, ECF

No. 17-8 at p. 2. Thus, there are facts of record in direct conflict on this material issue in the

case.  The date of 1981 (USPC calculation) or 1984 (Newman and BOP's calculation) indicate

the time frame for the search for responsive records.  Due to lack of detail in USPC's declaration

it is not possible to determine what time frame was used by USPC's record manager in the

search of USPC's hardcopy receipt files. It is likely, however, that the record manager may have

relied on USPC's miscalculation of this date and, consequently, did not search in the appropriate

time frame.  We cannot tell because of the lack of detail in the declaration.  In any event,

summary judgment is not appropriate given that this conflict in evidence which exists in the

record is material to the central issue in this case at this stage in the litigation: whether the search

conducted by USPC was adequate under FOIA standards.

There is also a conflict in the record about what name combinations were used by USPC

in searching for records responsive to Newman's request.  The USPC has now averred that it

initially searched by the terms "'Manuel,' 'Antonio,' 'Carlos,' 'Veciana,' and 'Blanche'" in its

EntelliTrak system, Thornton Decl. ¶ 14, ECF No. 17-4 at p. 3, and for the names "Blanche" and

"Veciana" in its physical file library containing active cases. *Id.* at ¶ 16, p. 4. In subsequent searches USPC avers that it searched "by every first name and last name combination." *Id.* at ¶ 17, p. 4.  USPC avers that its first search for every name combination did not occur until after Newman had provided Veciana's federal register number on 27 October 2020, *Id.,* even though Newman had requested such a search in his initial request, Compl. Ex. 7, ECF No. 1-1 at p. 51. Newman again requested a full name variation search on 15 August 2020, Compl. Ex. 10, ECF No. 1-1 at pp. 66-67.

USPC's avowal that all name combinations were searched after 27 October 2020 is contradicted in the record by contemporaneous correspondence between USPC's GIS and Newman.  USPC's declaration does not tell us whether the "record manager" that conducted searches in this case and the GIS that corresponded with Newman about this is the same person. In a 5 November 2020 letter to Newman, the USPC's GIS advised that USPC had "searched the following names in our records: Manuel Carlos, Manuel Antonio, Manuel Veciana and Manuel Blanche."  Compl. Ex. 14, ECF No. 1-1 at p. 89.  These are clearly not all the reasonable name combinations.

Newman responded to the USPC's GIS by letter dated 12 November 2020, advising that he was uninformed about whether the four name combinations reported in the 5 November 2020 letter "is all the name combinations you have used in your search as you have not indicated that any other name combinations have been searched." *Id.* at Ex. 15, p. 90.  Newman went on to explain his request for a more extensive name search in detail: "Mr. Veciana commonly went by the names 'Antonio Veciana' and 'Antonio Veciana Blanche.' If you have not searched those name combinations, I request that you do so. In addition, I would request that you search for the specific name as recorded on the BOP form, i.e., 'Blanche Veciana, Manuel Antonio Carlos' and

its most logical variation: 'Manuel Antonio Carlos Blanche Veciana.' Also please search for 'Antonio Blanche,' 'Antonio Blanche Veciana' and any other reasonable combination of the five names he used." *Id.* The GIS for USPC answered by letter dated 5 January 2021 and again stated: "We have searched once again for the following names in our records: Manuel Antonio, Manuel Carlos, Manuel Veciana and Manuel Blanche." Hardway Decl. Ex. G.  In addition, a printout was provided for the results of the database search for those four names.  *Id.*  Hence, there is a contradiction between the statements made by USPC at the time the searches were conducted and what the USPC Declarant is now saying about the name parameters of the searches conducted.  Throughout the history of this FOIA request at the administrative level Newman has repeatedly requested a full name variation search.  Throughout the history of this FOIA request at the administrative level, the USPC has consistently reported partial name searches until now averring that name combinations were used on some of the later searches. This is a material factual conflict going directly to a central issue in the case: was the search conducted by USPC for responsive records reasonably designed to find potentially responsive records.

The material fact of whether the search conducted by USPC was adequate is strongly contested by Newman as shown in the foregoing discussions regarding the adequacy of that search and the USPC's supporting declaration.  In this regard it must also be noted that Newman is handicapped by the elliptical, obtuse and cryptic nature of the declaration and its lack of detail and specificity. The nature of the declaration in this case does not afford "the FOIA requester the opportunity to challenge the adequacy of the search" nor to be able to identify actual facts relied upon by the USPC so as to be able to contest them.  *Oglesby*, 920 F.2d at 68.  This lack of knowledge created by the nature of the declaration filed, "seriously distorts the traditional

adversary nature of our legal system's form of dispute resolution with the result that the trial court is completely without the controverting illumination that would ordinarily accompany" a fully adversarial confrontation in a case with full discovery and fully informed parties on both sides of the case. *King*, 830 F.2d at 218 (internal citations and quotation marks omitted).

<u>CONCLUSION</u>

For all of the foregoing reasons USPC's Motion for Summary Judgment should be denied and USPC should be ordered to conduct a full and reasonably designed search for responsive records to Newman's FOIA request.  In the alternative, additional briefing in this case should be held in abeyance until such time as WNRC is open to public access thereby allowing Newman or his representatives to conduct the searches USPC has not conducted at that facility while also allowing the parties time for discovery aimed at further developing the record on the material facts in issue in this case.

Respectfully submitted,

/s/ Dan L. Hardway

_____

Dan L. Hardway #WV0001
1114 Erbacon Rd
Cowen, WV 26206
Phone (304) 449-4722
dan@hardwaylaw.com
Counsel for Plaintiff


Dated:  20 November 2021

25