UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN NEWMAN,**<br><br>        Plaintiff,<br><br>        v.<br><br>**FEDERAL BUREAU OF PRISONS,** *et al.*,<br><br>        Defendants. | Case No. 1:20-cv-3761 (TNM) |

## MEMORANDUM OPINION

Dr. John Newman made a Freedom of Information Act (FOIA) request to the Federal Bureau of Prisons and the United States Parole Commission, seeking information about former federal inmate Manuel Antonio Carlos Veciana Blanche. The Bureau informed Newman it had few responsive records, and the Commission claimed to have none. He sued in this Court to compel production. The agencies (collectively, the Government) now move for summary judgment, arguing they conducted reasonably adequate searches for the requested information. Newman cross-moves for summary judgment but concedes his claim against the Bureau. Reviewing the evidence, the Court finds there is no genuine dispute that the Commission conducted a search reasonably designed to discover responsive documents. Thus, the Government's motion will be granted and Newman's cross-motion denied.

### I.

Newman is a professor at James Madison University whose scholarly work largely focuses on the Kennedy Administration and Cold War America. As part of that work, Newman became interested in a former Cuban exile, Manuel Antonio Carlos Veciana Blanche (Veciana). *See* Newman Dec. 4, ECF No. 20-4. In the 1970s, Veciana was convicted on two felony drug

charges and sentenced to seven years' incarceration and three years of parole.[1]  *See* Compl., Ex. 1 at 8 (Judgment and Commitment Order), ECF No. 1-1.  He was ultimately released in 1981 and his supervision ended in 1984.  Pl.'s St. of Undis. Mat. Facts (SUMF) ¶¶ 1–2, ECF No. 20-1.

Newman made FOIA requests to the Bureau and Commission seeking any records, correspondence, reports, transcripts, or files related to Veciana.  *See* Compl. ¶¶ 8, 17, ECF No. 1; *see also* 5 U.S.C. § 552.  The Bureau released four partially redacted pages and explained that any remaining records had been destroyed.[2]  *See* Compl., Ex. 4 (Bureau Response).  The Commission said it found no files for Veciana, offering three possible reasons: (1) he might not be serving an offense eligible for parole; (2) he might be serving his term of parole under a state sentence; or (3) he did not serve the minimum term to be eligible for parole.  *See id.*, Ex. 9 (Commission 1st Response).

Newman's counsel wrote to the Commission and explained why none of the cited reasons would apply to Veciana.  *See id.*, Ex. 10 (7/15/20 Letter).  He asked the Commission to conduct another search using variations of the name "Antonio Veciana."  *Id.*  An information specialist for the Commission asked for Veciana's date of birth, which Newman's counsel provided.  *See id.*, Ex. 11 (Email Exchange).  After another search, the specialist again informed Newman there were no responsive records.  *See id.*, Ex. 12 (Commission 2d Response).

---

[1]  Congress abolished parole for most federal criminal offenses in the Sentencing Reform Act of 1984.  *See* Publ. L. 98-473, tit. II, § 217, 98 Stat. 2019 (1984), *codified as amended at* 28 U.S.C. § 994 (1984).

[2]  Newman concedes the Bureau's search was adequate.  *See* Opposition and Cross-Motion for Summ. Judg. (Pl.'s Opp) 5, ECF No. 20-3 ("Newman is satisfied that the Defendant BOP has conducted an adequate search for the records he requested from them").  The Court will therefore grant summary judgment to Bureau and deny Newman's cross-motion as to that agency.

Newman's counsel followed up again, this time providing the name under which the Bureau kept Veciana's records as well as his BOP file number. *See id.*, Ex. 13 (10/27/20 Letter). The Commission's specialist searched yet again, advising Newman's counsel there were no responsive records for the names "Manuel Carlos," "Manuel Antonio," "Manuel Veciana," and "Manuel Blance." *See id.*, Ex. 14 (Commission 3d response). Newman's counsel then asked the Commission to conduct another search using the names "Antonio Veciana" and "Antonio Veciana Blance," as well as the name-variation tied to Veciana's BOP files. *See id.*, Ex. 15 (11/12/20 Letter).

When no response was forthcoming, Newman filed this suit seeking an injunction compelling the Defendants to conduct certain searches, produce inventories of responsive results, and to abstain from destroying any documents exempt from disclosure. *See* Compl. 10 (prayer for relief). The Government now moves for summary judgment, arguing there can be no dispute of fact as to the adequacy of its searches. *See* Def.'s MSJ, ECF No. 17. Newman opposes that motion as to the Commission and cross-moves for summary judgment. *See* Pl.'s Opp., ECF No. 20. The motions are ripe for resolution.[3]

## II.

To prevail on a motion for summary judgment, a movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The governing law here is FOIA, which requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 365–66 (D.C.

---

[3] This Court has jurisdiction. *See* 5 U.S.C. § 552(a)(4)(B); 28 U.S.C. § 1331.

3

Cir. 2008); *see also* 5 U.S.C. § 552(a)(3)(A) (records sought must be "reasonably describe[d]"). A FOIA defendant is entitled to summary judgment if it proves "beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (citation omitted). The touchstone of this inquiry is the reasonableness of the search, not the records produced. *See Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015). With these rules in mind, "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

In moving for summary judgment, an agency may rely on a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Those declarations enjoy "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

### III.

Under these standards, the Commission is entitled to judgment as a matter of law. The Commission submitted substantive affidavits from agency representatives detailing the scope and methods of the searches at issue. Those affidavits show a thorough effort to uncover responsive records. Newman's attempt to cast doubt on the completeness or adequacy of that effort fails.

### A.

To start, the Commission's factual affidavits show it "conducted a search reasonably calculated to uncover all relevant documents." *Morley*, 508 F.3d at 1114.

According to Commission Assistant General Counsel Gregory Thornton, the Commission keeps all active files for parole-eligible inmates "in hardcopy form in a single file located in the file library at the USPC's sole office." Thornton Dec. ¶ 7, ECF No. 17-4. It also maintains electronic copies for documents generated after June 1, 2018, in a system called "EntelliTrak." *Id.* ¶¶ 7, 13. That system will show "whether a file was kept at USPC's office . . . , at a National Archive Facility, or whether the file had been destroyed in accordance with file retention policy." *Id.* ¶ 13. The Commission's FOIA specialist can search that database using an offender's first name, last name, federal register number, or D.C. Department of Corrections identification number (where applicable). *See id.*

Upon receiving Newman's request, the Commission's FOIA specialist first searched EntelliTrak using the terms "Manuel," "Antonio," "Carlos," "Veciana," and "Blanche." *Id.* ¶ 14. That search turned up some records, but none for the name "Veciana." *Id.* And none of the results matched the full name Newman provided to the agency—Manuel Antonio Carlos Veciana Blanche. *Id.* After consulting with Newman's counsel, the Commission's FOIA specialist conducted another search using "every first name and last name combination provided." *Id.* ¶ 16. The specialist also searched the Commission's physical files alphabetically for file names ending in "B" or "V." *Id.* Neither search was fruitful.

Newman's counsel then provided Veciana's BOP register number and the name indexed to his BOP file. *See* Compl., Ex. 13 (10/27/20 Letter). The Commission's FOIA specialist ran *another* search using the BOP register number, turning up no responsive records. Thornton Dec. ¶ 17. The specialist also searched the Commission's hard copy files again, this time looking through files organized under letters "A," "B," "C," "M," and "V." *Id.* Still nothing.

There is an obvious explanation for this absence: Veciana's file "would have been transferred to the National Archives and Records Administration" (NARA) ten years after his sentence terminated. Pl's Resp. to Def.'s St. of Mat. Undis. Fact (Pl.'s Resp. to DSMUF) ¶ 4, ECF No. 20-2; *see also id.* ¶ 28 ("Plaintiff admits . . . that [ ] USPC's record retention policy in 1979 directed [NARA] to destroy inactive parole files ten years after the file became inactive."). Here, relevant files would have gone to NARA's Washington National Records Center (WNRC). *See* Pl.'s SUMF ¶ 3, ECF No. 20-1. And the Commission's copies of those files would have been destroyed once it received a Records Transmittal and Receipt (SF-135). *See id.* ¶ 5.

After this litigation commenced, Thornton made additional efforts to seek out those archival files. Most relevant here, he directed the Commission's record manager to contact WNRC and provide them with Veciana's full name and federal register number. *See* Thornton Dec. ¶ 24. In response, WNRC explained it could not search archival files without a "transfer number" indexed to the sought-after agency file. *Id.* ¶ 29. So the Commission searched its physical files for a "transfer receipt" that would specify the relevant transfer number. *Id.* ¶¶ 30–31. It found none. *Id.* Again, there is a straightforward explanation for the missing receipt— "USPC only possesses archive transfer receipts and archive disposition receipts from 1999 through the present date." Krapels Dec. ¶ 2, ECF No. 24-2.

These searches were more than adequate. The Commission began its searches in the database that acts as a centralized hub for its information—Entellitrak. It eventually—if not initially—searched that database using "all combinations" of the names Veciana provided. Thornton Dec. ¶ 24; *see Machado Amadis v. Dep't of State*, 971 F.3d 364, 369 (D.C. Cir. 2020) (noting that it is "reasonable for the agency to conduct a search that tracked how its own records are organized, just as it surely would be reasonable for [a] clerk to search by a docket number to

locate all court records from a particular case"). The Commission's searches of its physical records were similarly exhaustive—the Commission searched physical files for *every* possible alphabetical category under which Veciana's files might have been kept. And when it became clear responsive records would most likely be at WNRC, the Commission took reasonable (but unsuccessful) steps to obtain those records.

**B.**

Newman raises a few arguments about why these searches were inadequate. None are availing.

*First*, he says the Commission's EntelliTrak database and hard-copy files were not locations in which records responsive to his request would be located. *See* Pl.'s Opp. 11–12. It is not clear what Newman thinks he can gain from showing the Commission's search was too exhaustive. If the Commission "conducted a search reasonably calculated to uncover all relevant documents," *Morley*, 508 F.3d at 1114, then it is immaterial whether it also conducted other, superfluous searches.

*Second*, Newman says the Commission failed to search WNRC's backup copies of all SF-135 forms—documents that might have revealed a "transfer number" or responsive records. *See* Pl.'s Opp. 15–16. The Commission disputes whether FOIA requires it to conduct that kind of search. *See* Reply 7, ECF No. 24. But the Court need not reach that question. The Commission ultimately *did* search the SF-135 copies, but it could not find files related to Veciana because the Commission "sent documents to NARA in containers" rather than in separate boxes for each offender. Krapels Dec. ¶ 5. As the Government explains, that means "none of the receipt forms can be connected or associated to the individual at issue in this case." Reply 8. Newman offers nothing to question the veracity of that claim.

7

*Third*, he says the Commission's declarations are too cursory and unspecific to support summary judgment. *See* Pl.'s Opp. 18–21. Newman mainly questions Thornton's declaration. He says the declaration is overinclusive of information related to the EntelliTrak and hardcopy searches but underinclusive of information related to searches for transfer receipts. Putting aside whether Newman accurately characterizes Thornton's factual allegations, the Court finds the Commission remedied any deficiencies with added detail in General Counsel Helen Krapels' later declaration. In it, the Commission offered further explanation of (1) how it stores transfer receipts; (2) how it searched those transfer receipts; and (3) why Veciana's transfer receipt would not be in its files. *See* Krapels Dec. ¶¶ 2–4.

*Fourth* and finally, Newman argues there are outstanding material disputes of fact about the Commission's searches. *See* Pl.'s Opp. 21–25; Pl.'s Reply 8.

One alleged dispute concerns the date on which Veciana's sentence terminated—the Government says that date was in 1981 in some filings; Newman and the BOP say it was in 1984. *See* Pl.'s Opp. 22 (citing conflicting evidence). There is a dispute on this point, but it is immaterial. This FOIA controversy boils down to a request for records likely held at the WNRC. To effectively search WNRC's archives, Newman or the Commission would have to provide a transfer number. But the Commission has no offender-specific transfer receipts for *any year* before 1999. *See* Krapels Dec. ¶¶ 2. And the WNRC's copies of transfer receipts from 1979 through 1986 do not refer to specific offenders. *Id.* ¶ 6. The Commission's alleged mistake about when Veciana's sentence terminated has no effect on its inability produce responsive records. Any dispute on this point is thus immaterial.

Newman says there is another dispute about "what name combinations were used by USPC in searching for records." Pl.'s Opp. 22.

8

That's an odd claim. Newman himself has said this very dispute is immaterial; his Opposition argues vigorously that EntelliTrak is a "database" in which it is "not [ ] reasonably likely that responsive records may be found." *Id.* at 11. Yet he simultaneously maintains that a dispute about the Commission's search terms in the same database "is a material factual conflict going directly to a central issue in the case." *Id.* at 24.

Anyway, there is no genuine dispute. Sure, one of the Commission's responses to Newman's FOIA request suggests a specialist searched a limited subset of potential names. *See* Compl. Ex. 14 (Commission's 3d Response) ("We have searched the following names in our records: Manuel Carlos, Manuel Antonio, Manuel Veciana and Manuel Blanche.").[4] But as Newman's own counsel intimated, that list is not facially exhaustive *or* inclusive. *See id.*, Ex. 15 (Pl.'s Letter 11/12/20) ("I do not know if that is all the name combinations you have used in your search . . . ."). And other summary judgment evidence makes clear the Commission's list was not exhaustive—Thornton has since explained the search "included every first name and last name combination provided by Plaintiff." Thornton Dec. ¶ 16. That declaration is entitled to a "presumption of good faith," *SafeCard Servs.*, 926 F.2d at 1201, and Newman offers no evidence to question its credibility.

The last "dispute" concerns whether the Commission should have searched its now-decommissioned legacy databases. *See* Pl.'s Reply 8–9. Krapels explained in her declaration that the Commission's Parole Decision History (PDH) database—later renamed the Decision Reporting and Monitoring System (DRMS)—was "shut down in 2018" and the data "entered

---

[4] It is unsurprising the Commission's has few records indexed to these name-searches. Since Congress abolished federal parole in 1987, the Commission primarily supervises the dwindling number of pre-Sentencing Reform Act offenders still on parole and offenders from D.C.'s local courts. *See* Organization, Mission, and Functions Manual: United States Parole Commission (Oct. 27, 2021), https://bit.ly/3L07gq7.

9

into Entellitrak." Krapels Dec. ¶ 10.  Newman says that explanation is ambiguous because "it is unclear whether the [PDH] covering 1985 to 2000 or the [DRMS covering later years] is the '*one . . . previous database*' incorporated into the EntelliTrak System."  Pl.'s Reply 9 (emphasis in original).  He says the PDH is "likely" to contain responsive documents but offers no indication that there *is* any such record in the Commission's possession after the 2018 consolidation.  He relies instead on *ipse dixit*: "As a permanent record it should still be in existence."  *Id.*  That kind of bare speculation about potential records does not create a genuine dispute.  *Safecard Servs.*, 926 F.2d at 1201 ("[M]ere speculation that as yet uncovered documents may exist does not undermine the funding that the agency conducted a reasonable search.").

None of Newman's arguments against summary judgment are availing.

\*   \*   \*

This case is yet another example of the "mismatched incentives" that FOIA creates. *Am. Ctr. for L. & Just. v. U.S. Dep't of Homeland Sec.* (*ACLJ*), No. 21-cv-01364, 2021 WL 5231939, at \*5 (D.D.C. Nov. 10, 2021).  As the Court explained in *ACLJ*, nonprofit FOIA requestees like Newman pay little to nothing for their FOIA requests.  *See id.*  So they do not internalize the costs of a wild goose chase like this one.  This case has tasked multiple attorneys at three agencies (including the U.S. Attorney's Office) and several FOIA specialists in the search for decades-old inmate records that by regulation should have been transferred or destroyed years ago.  Unsurprisingly, they were.  But the cost of this predictably fruitless search is borne by the agencies, and ultimately, American taxpayers.

## IV.

In sum, the evidence shows the Commission conducted multiple, thoroughgoing searches of its records.  The Commission engaged with Newman to clarify his request, then repeatedly

tried to search in a manner more likely to produce responsive documents. Those efforts were not fruitful, but they were "reasonably calculated to uncover all relevant documents." *Morley*, 508 F.3d at 1114. Newman has not established a genuine dispute as to that finding. The Government's Motion for Summary Judgment will therefore be granted, and Newman's cross-motion will be denied.

      A separate Order will issue.

Dated: May 13, 2022                                                        TREVOR N. McFADDEN, U.S.D.J.